RTP:VTN
F. #2019R01434

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

CHARLES McFADGEN,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**

COMPLAINT AND AFFIDAVIT IN SUPPORT OF ARREST WARRANT

(18 U.S.C. § 1029(a)(2))

No. 21-MJ-378

EASTERN DISTRICT OF NEW YORK, SS:

Kerry Calnan, being duly sworn, deposes and states that she is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

From on or about and between December 13, 2014 and October 22, 2019, within the Eastern District of New York and elsewhere, the defendant CHARLES McFADGEN did knowingly, and with intent to defraud, traffic in and use one or more unauthorized access devices during any one-year period, and by such conduct obtained anything of value aggregating $1,000 or more during that period, which conduct affected interstate commerce.

(Title 18, United States Code, Section 1029(a)(2))

The source of your deponent's information and the grounds for her belief are as follows:[1]

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been involved in the investigation of numerous cases involving wire fraud, bank fraud, money laundering, and other crimes. I am familiar with the facts and circumstances set forth below from my participation in the investigation, my review of the investigative file, and from reports of other law enforcement officers involved in the investigation.

## INTRODUCTION

2. The New York City Office of Chief Medical Examiner ("OCME") is responsible for, among other things, investigating all deaths of persons in New York City occurring from criminal violence, by accident, by suicide, suddenly when in apparent health, when unattended by a physician, in a correctional facility, or in any unusual or suspicious manner; reviewing all applications for a permit to cremate the body of any person who dies in New York City; and serving as the mortuary for the City, with a legal mandate to take custody of all unidentified and unclaimed remains in the five boroughs. The OCME is located in New York, New York.

3. The FBI, the New York City Department of Investigation ("DOI"), and the New York City Police Department ("NYPD") have been jointly investigating the unauthorized use of credit/debit cards in the names of decedents whose bodies were placed under the care and custody of the OCME.

---

to establish probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

4. From on or about and between October 6, 2003 and July 27, 2016, the defendant CHARLES MCFADGEN was employed by the OCME as a city mortuary technician until he retired.[2]

5. As described below, law enforcement authorities determined that the credit/debit cards belonging to at least five decedents whose bodies were under the care and custody of the OCME were used by the defendant CHARLES MCFADGEN. Among the unauthorized transactions believed to be conducted by MCFADGEN were purchases made at CVS stores throughout New York City.

THE CVS EXTRACARE ACCOUNT

6. CVS offers as a service to its customers the use of a CVS ExtraCare account. A CVS ExtraCare account allows a customer to access coupons and obtain discounts on purchases when the CVS ExtraCare account information is presented at the time of purchase. A customer who uses a CVS ExtraCare account can accumulate coupons and discounts that may not be available to all other CVS customers by making purchases linked to that CVS ExtraCare account.

7. Law enforcement authorities obtained records from CVS and determined that from on or about and between December 30, 2015 and October 22, 2019, the defendant CHARLES MCFADGEN used a CVS ExtraCare account number ending in 5711 (the "McFadgen ExtraCare Account").[3] During that period, MCFADGEN made purchases

---

[2] The last date when MCFADGEN's was physically present at the OCME and assigned to work was October 1, 2015.

[3] The McFadgen ExtraCare Account was opened in the name of someone other than MCFADGEN.

linked to the McFadgen ExtraCareAccount using three different debit cards that he owned. Those purchases are summarized as follows:

    a. On or about and between December 30, 2015, and February 6, 2017, McFADGEN made approximately 28 purchases at CVS stores using a Visa debit card held in his name and bearing an account number ending in 1069.

    b. On or about and between July 26, 2016, and October 6, 2019, McFADGEN made approximately 10 purchases at CVS stores using a Chase Bank debit card held in his name and bearing an account number ending in 1500. Video surveillance obtained from CVS depicts McFADGEN making two of those purchases on March 1, 2019 and April 3, 2019.

    c. On or about and between August 7, 2017, and October 22, 2019, McFADGEN made approximately 28 purchases at CVS stores using a Visa debit card held in his name and bearing an account number ending in 9247. Video surveillance obtained from CVS depicts McFADGEN making seven of those purchases on December 24, 2017; January 10, 2018; January 20, 2018; November 2, 2018; January 18, 2019; January 28, 2019; and April 15, 2019.

At least 38 of the purchases made by McFADGEN between December 30, 2015 and October 22, 2019, using debit cards held in his name and the McFadgen ExtraCare Account were made at the CVS store located at 282 East 149th Street, Bronx, New York (the "East 149th Street CVS"), which is the CVS store closest to McFADGEN's residence.

<u>UNAUTHORIZED USE OF DEBIT AND CREDIT CARDS</u>

    8. On or about December 8, 2014, the OCME took possession and custody of the body of a decedent who died in his/her residence in New York, New York,

and whose identity is known to law enforcement authorities ("Decedent-1"). I have reviewed account statements received from TD Bank for an account linked to a debit card number ending in 8307 in the name of Decedent 1 ("Decedent-1's Card"), with an address in New York, New York. I determined that approximately 374 charges were made using Decedent-1's Card after his/her death, from on or about and between December 13, 2014, and December 29, 2015, for a total of $7,503.69. Among the charges made using Decedent-1's Card after his/her death were approximately 165 charges made at 18 different CVS stores in New York City, including approximately 52 charges made at the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that approximately 92 of the CVS purchases were linked to the McFadgen ExtraCare Account.

9. On or about July 6, 2016, the OCME took possession and custody of the body of a decedent who died in his/her residence in Queens, New York, and whose identity is known to law enforcement authorities ("Decedent-2"). I have reviewed account statements received from Chase Bank for an account linked to a credit card number ending in 5800 in the name of Decedent-2 ("Decedent-2's Card"), with an address in Ridgewood, New York. I determined that approximately five charges were made using Decedent-2's Card after his/her death, from on or about and between July 6, 2016, and July 12, 2016, for a total of $302.27. Among the charges made using Decedent-2's Card after his/her death were two charges made at two different CVS stores, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that one of the CVS purchases was linked to the McFadgen ExtraCare Account.

10. On or about July 27, 2016, the OCME took possession and custody of the body of a decedent who died in his/her residence in Queens, New York, and whose

identity is known to law enforcement authorities ("Decedent-3"). I have reviewed account statements received from Chase Bank for an account linked to a debit card number ending in 0703 in the name of Decedent-3 ("Decedent-3's Card"), with an address in Corona, New York. I determined that approximately 13 charges were made using Decedent-3's Card after his/her death, from on or about and between August 1, 2016, and August 22, 2016, for a total of $272.15. Among the charges made using Decedent-3's Card after his/her death were eight charges made at the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that the eight CVS purchases were linked to the McFadgen ExtraCare Account.

        11.    On or about October 20, 2016, the OCME took possession and custody of the body of a decedent who died in his/her residence in Queens, New York, and whose identity is known to law enforcement authorities ("Decedent-4"). I have reviewed account statements received from American Express for an account linked to a credit card number ending in 1006 in the name of Decedent-4 ("Decedent-4's AmEx Card"), with an address in Queens Village, New York. I determined that approximately 25 charges were made using Decedent-4's AmEx Card after his/her death, from on or about and between October 20, 2016, and November 25, 2016, for a total of $662.17. Among the charges made using Decedent-4's AmEx Card after his/her death were seven charges made at two different CVS stores, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that the seven CVS purchases were linked to the McFadgen ExtraCare Account.

        12.    I have also reviewed account statements received from Barclays Bank for an account linked to a credit card number ending in 6656 in the name of Decedent-4

("Decedent-4's Barclays Card"), with an address in Queens Village, New York. I determined that approximately 15 charges were made using Decedent-4's Barclays Card after his/her death, from on or about and between October 20, 2016, and November 16, 2016, for a total of $360.10. Among the charges made using Decedent-4's Barclays Card after his/her death were 10 charges made at three different CVS stores in New York City, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that five of the CVS purchases were linked to the McFadgen ExtraCare Account.

13. I have reviewed account statements received from Capital One Bank for an account linked to a credit card number ending in 9975 in the name of Decedent-4 ("Decedent-4's Capital One Card"), with an address in Queens Village, New York. I determined that approximately 29 charges were made using Decedent-4's Capital One Card after his/her death, from on or about and between October 20, 2016, and November 9, 2016, for a total of $597.99. Among the charges made using Decedent-4's Capital One Card after his/her death were eight charges made at four different CVS stores in New York City, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that the eight CVS purchases were linked to the McFadgen ExtraCare Account.

14. I have reviewed account statements received from Comenity Bank for an account linked to a credit card number ending in 1301 (the "Comenity Card"), with an address in Queens Village, New York. The Comenity Card is owned by Decedent-4's mother; Decedent-4 was an authorized user of the Comenity Card. I determined that approximately 16 charges were made using the Comenity Card from on or about and

between October 20, 2016, and November 27, 2016, for a total of $472.62. On or about November 27, 2016, Decedent-4's mother contacted Comenity Bank to report that Decedent-4 had passed away and that the 16 charges were not authorized. Among the unauthorized charges made using the Comenity Card were six charges made at two different CVS stores, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that three of the CVS purchases were linked to the McFadgen ExtraCare Account.

15. On or about March 8, 2017, the OCME took possession and custody of the body of a decedent who died in his/her residence in Brooklyn, New York, and whose identity is known to law enforcement authorities ("Decedent-5"). I have reviewed account statements received from Target Financial Services for a credit card account linked to a credit card number ending in 5055 in the name of Decedent-5 ("Decedent-5's Target Card"), with an address in Brooklyn, New York. I determined that approximately 18 charges were made using Decedent-5's Target Card after his/her death, from on or about and between March 13, 2017, and May 2, 2017, for a total of $545.73. Among the charges made using Decedent-5's Target Card after his/her death were five charges made at two different CVS stores, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that four of the CVS purchases were linked to the McFadgen ExtraCare Account.

16. I have reviewed account statements received from Chase Bank for the account linked to a debit card account bearing an account number ending in 9317 in the name of Decedent-5 ("Decedent-5's Chase Card"), with an address in Brooklyn, New York. I determined that approximately 137 charges were made using Decedent-5's Chase Card after

his/her death, from on or about and between March 12, 2017, and June 26, 2017, for a total of $2,803.00. Among the charges made using Decedent-5's Chase Card after his/her death were 26 charges at five different CVS stores in New York City, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that 17 of the CVS purchases were linked to the McFadgen ExtraCare Account.

17. I have reviewed account statements received from Chase Bank for an account in the name of a person whose identity is known to law enforcement authorities ("John Doe 1")[4] linked to a debit card number ending in 3504 in the name of John Doe 1 ("John Doe 1's Card"), with an address in New York, New York. I determined that approximately eight charges were made using John Doe 1's Card from on or about and between May 6, 2017, and May 9, 2017, for a total of $127.79. John Doe 1 informed law enforcement authorities that he/she did not make nor authorize those charges. Among the unauthorized charges made using John Doe 1's Card were four charges made at two different CVS stores, including the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that the four CVS purchases were linked to the McFadgen ExtraCare Account.

18. I have reviewed account statements received from Citibank for an account in the name of a person whose identity is known to law enforcement authorities ("John Doe 2") linked to a debit card number ending in 2241 ("John Doe 2's Card"), with an address in Bronx, New York. I determined that three charges were made using John Doe 2's Card from on or about and between November 12, 2018, and November 13, 2018, for a total

---

[4] The individuals identified herein as John Does 1, 2 and 3 were not decedents when McFADGEN used their credit and debit cards.

of $117.56, which were reported as fraudulent by John Doe 2. Among the unauthorized charges made using John Doe 2's Card were two charges made at the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that the two CVS purchases were linked to the McFadgen ExtraCare Account.

19. I have reviewed account statements received from Webster Bank for an account in the name of a person whose identity is known to law enforcement authorities ("John Doe 3") linked to a debit card number ending in 3057 in the name of John Doe 3 ("John Doe 3's Card"), with an address in Scarsdale, New York. I determined that approximately four charges were made using John Doe 3's Card from on or about and between October 21, 2019, and October 22, 2019, for a total of $72.77, which were reported as fraudulent by John Doe 3. Among the fraudulent charges made using John Doe 3's Card were two charges made at the East 149th Street CVS. Law enforcement authorities obtained records from CVS and determined that those two CVS purchases were linked to the McFadgen ExtraCare Account.

20. On or about March 22, 2021, law enforcement authorities interviewed the defendant CHARLES MCFADGEN, who stated in sum and substance and in part that his OCME co-workers had given him credit cards belonging to decedents. He estimated that he was given about four or five credit cards while he was employed by the OCME and about six credit cards after he retired. He said that he used the cards to make small purchases, such as purchasing stamps from the post office and buying food from McDonald's.

WHEREFORE, your deponent respectfully requests that an arrest warrant issue so that the defendant CHARLES MCFADGEN may be dealt with according to law. Your affiant also respectfully requests that this affidavit and any issued arrest warrant be

sealed as the defendant remains at large and public disclosure of this affidavit and/or arrest warrant may lead him to notify confederates, flee, or otherwise seek to avoid apprehension.

_____
Kerry Calnan
Special Agent, Federal Bureau of Investigation

Sworn to before me by telephone this
 29 day of March, 2021


_____/s Roanne L. Mann_____
THE HONORABLE ROANNE L. MANN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK